# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELICIANO GALLEGOS, | Case No. 1:15-cv-01397 DLB (PC) |
| Plaintiff, | ORDER DISMISSING SECOND AMENDED COMPLAINT |
| v. | WITH LEAVE TO AMEND |
| STAINER, et al., | THIRTY-DAY DEADLINE |
| Defendants. | |

Plaintiff Feliciano Gallegos ("Plaintiff"), a state inmate in the custody of the California Department of Corrections and Rehabilitation, is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed this action on September 15, 2015. Pursuant to Court order, he filed a Second Amended Complaint on February 19, 2016. Plaintiff names over thirty Defendants.[1]

**A.    SCREENING STANDARD**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall

---

[1] Plaintiff consented to the jurisdiction of the United States Magistrate Judge on October 2, 2015.

dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Id.

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff's allegations must link the actions or omissions of each named defendant to a violation of his rights; there is no respondeat superior liability under section 1983. Iqbal, 556 U.S. at 676-77; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934. Plaintiff must present factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

**B.     FACTUAL ALLEGATIONS**

Plaintiff is currently incarcerated at Corcoran State Prison, where the events at issue occurred.

He alleges that on October 20, 2010, he was validated as a gang associate based on illegal, erroneous and fabricated evidence, and has been retained in the Security Housing Unit ("SHU") since that date. Plaintiff contends that all source items are false "due to staff's failure to produce articulated facts or evidence." ECF No. 11, at 4. He alleges that Defendant Escobedo fabricated

2

all source items and failed to produce supporting evidence. He also alleges that Defendant Escobedo knew that Plaintiff was not in any gangs, and did not speak or understand English. Plaintiff states that Defendant Escobedo was the "main party" who lied and fabricated evidence. ECF No. 11, at 9.

Plaintiff explains that "they" took his address book, and returned it "with no pages missing or crossed out." ECF No. 11, at 19.

Plaintiff alleges that Defendant Burt knowingly supported Defendant Escobedo's improper validation.

Also on October 20, 2010, Defendant Assistants IGI John Does escorted him off the yard and transferred him to CSP/Ironwood. Doe 1 advised Plaintiff that he was transferred to get him off the yard, and that Plaintiff should not have any problem "beating the validation due to it being false and fabricated." ECF No. 11, at 18.

Plaintiff alleges that Defendant Stainer was the head of the California Department of Corrections and Rehabilitation ("CDCR") and is responsible for the management of prisons, including promulgating regulations. Plaintiff alleges that "if" he reviewed his validation packet, he "could see" that it was illegal, erroneous and fabricated. ECF No. 11, at 7.

Defendants Cate and Beard were the secretary and director of CDCR and were responsible for creating and allowing the continuation of unconstitutional policies.

On October 21, 2010, Defendant McKinney submitted a CFC 114-D Ad-Seg placement. Defendant McKinney told Plaintiff that she did not know anything about him and that she was told to give him the CDC 114-D. Plaintiff requested an investigation because he was not a gang member. Defendant McKinney failed to respond, and left Plaintiff not knowing why he was in Ad-Seg.

On October 28, 2010, Defendant Ochoa failed to investigate the false allegations against Plaintiff, depriving him of his right to prove his innocence. Also on October 28, 2010, Defendants McDowell and BerTheaud failed to acknowledge Plaintiff's request for an investigation.

///

///

On December 3, 2010, Defendants Moreno and Evanilla reviewed and signed the validation, but never actually reviewed the documents to determine whether the validation was supported.

On January 24, 2011, Defendant Chambers denied Plaintiff his due process right to appeal his validation.

On February 23, March 10 and April 13, 2011, Defendant John Doe, appeals coordinator, continued to deprive Plaintiff of his due process rights.

On May 11, 2011, Defendants Chaus, Ruff and Kingston failed to "comply," resulting in a deprivation of Plaintiff's due process rights. ECF No. 11, at 13.

On March 8, 2012, Defendant John Doe denied Plaintiff's appeal even though documents supported a conclusion that the validation was erroneous.

On April 17, 2012, Defendants Gonzales and Guzman denied Plaintiff's due process rights by erroneously denying his appeal of the validation and "failed to provide original documents in support of factual facts." ECF No. 11, at 11.

Plaintiff contends that he did not receive his source item until May 1, 2012, nineteen months after his validation.

On May 3, 2012, Defendants Leon and Garcia failed to acknowledge Plaintiff's request for an investigation into the erroneous validation.

On November 15, 2012, Defendants Sandor, Solis, McGuire and Pina failed to acknowledge Plaintiff's request for an investigation into the erroneous validation.

On May 2, 2013, Defendant Gipson knew that Plaintiff did not have any ties to prison gangs, and she told Judge "Michael J." that he did not have any disciplinary RVRs. However, she "didn't try to comment or suggest anything." ECF No. 11, at 16.

Also on May 2, 2013, Defendants Kellogg and Matta decided to retain Plaintiff in the SHU without any proof. Defendant Campbell failed to record Plaintiff's words and the committee did not give Plaintiff a chance to express what mattered.

On August 16, 2013, Defendant Davidson failed to acknowledge Plaintiff's request for an investigation into the erroneous validation.

4

On December 3, 2014, Defendant Vasquez deprived Plaintiff of his due process rights "when all facts showed that this validation is illegal, erroneous, fabricated and hearsay when all material facts support all allegations to put [him] back to mainline where [he] belong[s]." ECF No. 11, at 16.

On June 9, 2015, Defendants Vender-Poel and Patterson failed to acknowledge Plaintiff's request to disclose "actual or articulated documents in support of clearing up" his validation. ECF No. 11, at 17.

Plaintiff also alleges that in "each court proceeding from superior court of California to 9th Circuit Courts," his motions requesting inspection and production of documents from defendants were denied. EFC No. 11, at 18. Plaintiff believes that if the motions were granted, he could have easily supported his innocence. He lists each judge who denied his various motions and writs, and alleges that the courts have denied him his due process rights.

**C.     DISCUSSION**

1.     Rule 8 and Linkage

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim for relief, Plaintiff must set forth factual allegations sufficient to state a plausible claim for relief. Iqbal, 129 S.Ct. at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Iqbal, 129 S.Ct. at 1949-50; Moss, 572 F.3d at 969.

Moreover, under section 1983, Plaintiff must link the named defendants to the participation in the violation at issue. Iqbal, 129 S.Ct. at 1948-49; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235

(9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  Liability may not be imposed under a theory of respondeat superior, and some causal connection between the conduct of each named defendant and the violation at issue must exist.  Iqbal, 556 U.S. at 676-77; Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074-75 (9th Cir. 2013); Lacey v. Maricopa County, 693 F.3d 896, 915-16 (9th Cir. 2012) (en banc); Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011), cert. denied, 132 S.Ct. 2101 (2012).

In the prior screening order, the Court explained that Plaintiff's complaint contained almost no factual information.  Although he complained of an illegal gang validation and retention in the SHU, he recited only legal conclusions as to each Defendant.

Plaintiff's Second Amended Complaint does not sufficiently cure this issue.  Again, Plaintiff has provided mostly legal conclusions for each Defendant, without facts to support his contentions.  He again names numerous Defendants and again sets forth a "valued rating" based on his perception of the depth of their involvement in the events at issue.

Plaintiff's amendments do not meet the requirement of Rule 8, which requires factual allegations sufficient to state a plausible claim for relief.  Plaintiff's allegations remain confusing and disjointed, and he fails to sufficiently link any Defendant to specific conduct, with factual support.  Plaintiff therefore fails to state a claim against any Defendant.

       2.       Claims Relating to Other Court Proceedings

In his prior complaint, Plaintiff named numerous judges as Defendants.  Now, while he does not name judges directly, he alleges that state and federal courts denied various motions, which denied him of his due process rights.  Again, as the Court previously explained, Plaintiff's challenges to other courts' proceedings must be brought within the action where the motions were decided.

       3.       First Amendment

The First Amendment prohibits government officials from "abridging the freedom of speech ... or the right of the people peaceably to assemble."  Prisoners retain those First Amendment rights not inconsistent with their status as prisoners or with legitimate penological objectives of the corrections system.  See Pell v. Procunier, 417 U.S. 817, 822 (1974).  Although a

prisoner does not lose all First Amendment protections when he enters prison, id., the "inmate's 'status as a prisoner' and the operational realities of a prison dictate restrictions on the associational rights among inmates." Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 125-26 (1977).

Prison regulations that infringe on a prisoner's First Amendment rights are valid so long as they are "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). A prison regulation that impinges on a prisoner's First Amendment right to free speech is valid only if it meets the Turner test. Shaw v. Murphy, 532 U.S. 223, 229 (2001). In addition, although the Supreme Court has held that the First Amendment right to freedom of association is among the rights least compatible with incarceration, Overton v. Bazzetta, 539 U.S. 126, 131 (2003), it has not determined the scope of associational rights that prisoners might retain, id. at 132.

The exact nature of Plaintiff's First Amendment claims is unclear, though he appears to suggest that the improper validation and retention in the SHU violated his right to freedom of speech, and his right to associate with inmates of his choice. However, while an invalid gang validation may be actionable under the Fourteenth Amendment under certain facts, Plaintiff does not allege sufficient facts to make such a claim under the First Amendment.

Certainly, the identification of prison gang members is a legitimate penological interest, and Plaintiff makes no claim to the contrary. California's process of identifying suspected gang members and associates and confining them in the SHU consistently has been found by the Ninth Circuit to serve legitimate penological interests. See, e.g., Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. (2003) "It is clear ... that prisons have a legitimate penological interest in stopping prison gang activity."). Moreover, "the Constitution [does not] recognize[ ] a generalized right of 'social association.'" City of Dallas v. Stanglin, 490 U.S. 19, 25, 109 S.Ct. 1591 (1989) (activity protected by First Amendment right of association includes "intimate association" and "expressive association"); Jones v. N.C. Prisoners' Labor Union, Inc., 433 U.S. 119, 131, 97 S.Ct. 2532, (1977) (prison officials may curtail prisoner's associational rights if they conclude such

///

associations "possess the likelihood of disruption to prison order or stability, or otherwise interfere with [ ] legitimate penological objectives").

Plaintiff therefore fails to state a claim under the First Amendment.

4.       Eighth Amendment

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted). Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment. Morgan, 465 F.3d at 1045 (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730, 737, 122 S.Ct. 2508 (2002); Rhodes, 452 U.S. at 346.

However, it is well established that the Eighth Amendment's prohibition against cruel and unusual punishment is not violated by classification programs which pursue "important and laudable goals" and are instituted under the state's authority to operate correctional facilities. See Neal v. Shimoda, 131 F.3d 818, 833 (9th Cir.1997) (classification program designed to treat and reduce recidivism of sex offenders is well within state's authority to operate correctional facilities and does not violate contemporary standards of decency). Nor does misclassification inflict pain so as to be cruel and unusual punishment, in violation of the Eighth Amendment. See Hoptowit v. Ray, 682 F.2d 1237, 1255-56 (9th Cir.1982); Ramos v. Lamm, 639 F.2d 559, 566-67 (10th Cir.1980), cert. denied, 450 U.S. 1041 (1981).

Based on the above, the Court explained in the prior screening order that Plaintiff could not state an Eighth Amendment claim related to his alleged erroneous classification as a gang associate and placement in the SHU, and instructed him not to include such claims in his amended complaint.

Nonetheless, Plaintiff continues to allege an Eighth Amendment claim, offering additional allegations that he was subjected to torture and dehumanizing treatment, which seriously impacted his physical and emotional health. Plaintiff's conclusory allegations do not cure the Eighth Amendment deficiencies.

Plaintiff therefore fails to state a claim under the Eighth Amendment.

5. Fourteenth Amendment

a. *Procedural Due Process*

The assignment of validated gang members and associates to the SHU is an administrative measure rather than a disciplinary measure, and is "essentially a matter of administrative discretion." Bruce, 351 F.3d at 1287 (quoting Munoz v. Rowland, 104 F.3d 1096, 1098 (9th Cir. 1997)). As a result, prisoners are entitled to the minimal procedural protections of adequate notice, an opportunity to be heard, and periodic review. Bruce, 351 F.3d at 1287 (citing Toussaint v. McCarthy, 801 F.2d 1080, 1100-01 (9th Cir. 1986), abrogated in part on other grounds by Sandin v. Connor, 515 U.S. 472, 115 S.Ct. 2293 (1995)). In addition to these minimal protections, there must be "some evidence" bearing "some indicia of reliability" supporting the decision. Castro v. Terhune, 712 F.3d 1304, 1314 (9th Cir. 2013) (citing Superintendent v. Hill, 472 U.S. 445, 456, 105 S.Ct. 2768 (1985) and Bruce, 351 F.3d at 1287) (internal quotation marks omitted).

Plaintiff's allegations are based on his contention that he was improperly validated pursuant to false, misleading evidence, and then held in the SHU as a result. A prisoner may state a claim for violation of procedural due process based on an invalid gang validation, but in this instance, Plaintiff's failure to provide factual context to his claims prevents the Court from finding that he states such a claim. Plaintiff generally refers to his validation as false, illegal, incomplete, erroneous, invalid and unreliable, but his conclusory allegations do not provide any facts to support his contention. Plaintiff also states that his validation was not supported by "some evidence," but he again fails to explain why.

b. *Substantive Due Process*

The concept of substantive due process is expanded only reluctantly and therefore, if a constitutional claim is covered by a specific constitutional provision, the claim must be analyzed

under the standard appropriate to that specific provision, not under the rubric of substantive due process. County of Sacramento v. Lewis, 523 U.S. 833, 843, 118 S.Ct. 1708 (1998) (quotation marks and citation omitted).

Here, Plaintiff's claim is properly analyzed as a procedural due process issue, and the Court will not find a substantive due process claim.

### c. *Discrimination*

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439, 105 S.Ct. 3249 (1985); Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1123 (9th Cir. 2013); Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008). To state a claim, Plaintiff must show that Defendants intentionally discriminated against him because of his membership in a protected class. Hartmann, 707 F.3d at 1123; Furnace, 705 F.3d at 1030; Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003); Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001).

Plaintiff simply cites the Equal Protection Clause, but he provides absolutely no facts to support a finding that he was discriminated against on the basis of his membership in a protected class. The Court explained the requirements of a discrimination claim in the prior order, but Plaintiff did not correct the deficiency.

### 6. Ex Post Facto Clause

The Ex Post Facto Clause "forbids the application of any new punitive measure to a crime already consummated," and "pertain[s] exclusively to penal statutes." Kansas v. Hendricks, 521 U.S. at 370 (internal quotation marks and citations omitted). Plaintiff's allegations have nothing to do with the Ex Post Facto Clause, and he therefore fails to state a claim.

### 7. Conspiracy

A conspiracy claim brought under section 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v. Parks,

450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

While Plaintiff often concludes that the Defendants conspired against him, he provides absolutely no facts to support a showing that any Defendants had an agreement to do so. He therefore fails to state a conspiracy claim under section 1983.

**D.    CONCLUSION**

Plaintiff's complaint does not state any cognizable claims against any Defendants.

The Court will give Plaintiff **one final opportunity** to amend his complaint. However, only his procedural due process claim related to his allegedly improper gang validation should be amended. In amending, Plaintiff should only name the Defendants who were directly involved in the validation, and he should include facts to sufficiently link each named Defendant to the alleged deprivation of his rights. Akhtar v. Mesa, 698 F.3d 1202, 1212-13 (9th Cir. 2012); Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). If Plaintiff amends, he may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

If Plaintiff files an amended complaint, it should be brief, Fed. R. Civ. P. 8(a), but under section 1983, it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights and liability may not be imposed on supervisory personnel under the mere theory of *respondeat superior*, Iqbal, 556 U.S. at 676-77; Starr v. Baca, 652 F.3d 1202, 1205-07 (9th Cir. 2011), *cert. denied*, 132 S.Ct. 2101 (2012). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supercedes the original complaint, Lacey v. Maricopa County, 693 F.3d 896, 907 (9th Cir. 2012) (en banc), and it must be "complete in itself without reference to the prior or superceded pleading," Local Rule 220.

///

11

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's Second Amended Complaint is DISMISSED WITH LEAVE TO AMEND;
2. The Clerk's Office shall send Plaintiff a complaint form;
3. Within **thirty (30) days** from the date of service of this order, Plaintiff must file an amended complaint curing the deficiencies identified by the Court in this order;
4. <u>If Plaintiff fails to comply with this order, this action will be dismissed, without prejudice, for failure to obey a court order.</u>

IT IS SO ORDERED.

Dated:   **May 11, 2016**               /s/ Sandra M. Snyder
                                                             UNITED STATES MAGISTRATE JUDGE